UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COLEEN MARY DIETRICH,

      Plaintiff,

v.              5:15-CV-1219
                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br> Counsel for Plaintiff<br>300 South State St., Ste. 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br> Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | TOMASINA DIGRIGOLI, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

   This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 15.) This case has proceeded in accordance with General Order 18.

   Currently before the Court, in this Social Security action filed by Coleen Mary Dietrich ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on November 14, 1964. (T. 615.) She completed the 11th grade. (T. 647.) Generally, Plaintiff's alleged disability consists of heart disease, herniated discs, torn ligament in her hand, chronic obstructive pulmonary disease ("COPD"), and hypertension. (T. 646.) Her alleged disability onset date is June 20, 2009. (T. 457-458.) Her date last insured is September 30, 2014. (T. 573.) She previously worked as a home health aide, auto detailer, and car rental deliverer. (T. 148, 427.)

### B. Procedural History

On March 5, 2010, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 25.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 23, 2011, Plaintiff appeared before the ALJ, F. Patrick Flanagan. (T. 27-53.) On January 10, 2012, ALJ Flanagan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-24.) On April 1, 2013, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court (5:13-CV-0610). On December 12, 2013, the Commissioner stipulated to an

Order reversing the final decision of the Commissioner and directing that the case be remanded. (T. 483-484.) On May 1, 2014, the AC issued an Order remanding the case to the ALJ. (T. 498-502.) On August 25, 2014, Plaintiff again appeared before ALJ Flanagan. (T. 413-461.) On December 9, 2014, ALJ Flanagan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 386-412.) On August 26, 2015, the AC denied Plaintiff's request for review, rendering the ALJ's December 9, 2014, decision the final decision of the Commissioner. (T. 369-375.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 392-405.) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2014 and Plaintiff had not engaged in substantial gainful activity since June 20, 2009. (T. 392.) Second, the ALJ found that Plaintiff had the severe impairments of coronary artery disease; bilateral carpal tunnel syndrome ("CTS"), status post bilateral release; cervical and lumbrosacral degenerative disc disease; Chiari malformation; and depression. (T. 392.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 393-395.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (T. 395.)[1] Specifically, the ALJ determined Plaintiff could: lift, carry, push and pull 20 pounds occasionally and ten pounds frequently; stand and walk a total

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

of about six hours out of an eight-hour workday and sit about six hours of an eight-hour workday; bilaterally perform continuous non-forceful grasping; frequently finger; not work at unprotected heights or have concentrated exposure to dust, orders, fumes, and pulmonary irritants; not be exposed to extreme heat, more than occasionally operate a motor vehicle or have more than occasional exposure to moving mechanical parts, high humidity, wetness, or vibrations; and perform low-stress work, defined as no more than occasional decision making, no responsibility for the safety of others, no negotiation or conflict resolution and no fast-paced production rate tasks. (T. 395-396.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 403-404.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC determination was unsupported by substantial evidence because it was the product of the ALJ's errors in weighing the opinion evidence. (Dkt. No. 12 at 16-20 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's credibility analysis was unsupported by substantial evidence. (*Id.* at 20-22.) Third, and lastly, Plaintiff argues the step five determination was unsupported by substantial evidence because the ALJ relied on vocational expert ("VE") testimony in response to an incomplete hypothetical question. (*Id.* at 22.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ's RFC was supported by substantial evidence. (Dkt. No. 13 at 6-11 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed the credibility of Plaintiff's subjective complaints. (*Id.* at 11-14.) Third, and lastly, Defendant argues the ALJ properly found that Plaintiff could perform a significant number of jobs. (*Id.* at 14-17.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and

6

> (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

Plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing Plaintiff's RFC, the ALJ must consider "all of the relevant medical and other evidence." *Id.* at §§ 404.1545(a)(3)-(4), 416.945(a)(3)-(4). An RFC determination must account for limitations imposed by both severe and non-severe impairments. *See Id.* at §§ 404.1545(a)(2), 416.945(a)(2). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.; Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996).

#### i.) Mental RFC

Plaintiff argues the ALJ erred in his mental RFC determination because he failed to include the opinion of non-examining State agency medical consultant, J. Staussner, that Plaintiff had moderate limitations in maintaining social functioning. (Dkt. No. 12 at 17 [Pl.'s Mem. of Law].)

On January 29, 2013, Dr. Straussner, reviewed Plaintiff's medical record and opined that she was "moderately limited" in her ability to: interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (T. 493-494.) However, Dr. Straussner ultimately opined that "[f]rom a psychiatric point of view, [Plaintiff] can respond to supervision, interact with others while performing work involving simple tasks." (T. 494.)

7

The ALJ stated, at step three of his determination, that he concurred and adopted Dr. Straussner's findings. (T. 394.) Indeed, at step three the ALJ determined that Plaintiff had moderate difficulties in maintaining social functioning. (*Id.*) Althougth the ALJ determined at step three that Plaintiff had a "moderate" limitation in social functioning, the ALJ did not err in his mental RFC determination because a step three determination is not an RFC determination. Further, the ALJ's mental RFC determination properly accounted for limitations imposed by Plaintiff's mental impairment.

First, the ALJ properly considered Dr. Straussner's opinion at step three of his determination and as the Regulations make clear, the ALJ's step two and three determinations are not RFC determinations. Second, the ALJ's mental RFC determination was supported by substantial evidence in the record and even a moderate limitation in social functioning would not preclude the ability to perform unskilled work. *See Whipple v. Astrue*, 479 Fed.App'x 367 (2012).

The Regulations make clear that the factors outlined in step two and three are only to be applied in determining the severity of a mental impairment, not Plaintiff's RFC. 20 C.F.R. § 404.1520a(d). The ALJ properly considered the factors outlined in the Regulations at steps two and three, and concluded that Plaintiff's mental impairment was severe. (T. 392-395.) Plaintiff does not argue that the ALJ erred in step two or three of his determination.

The ALJ's mental RFC assessment was supported by substantial evidence. Although Dr. Straussner determined that Plaintiff had moderate limitations in social functioning; Dr. Straussner ultimately opined that despite those limitations Plaintiff was

8

capable of performing simple tasks. (T. 494.) The ALJ's mental RFC determination adequately provided for Plaintiff's moderate limitation in social functioning by limiting her to unskilled work. (T. 396.) The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment.").

Further, the ALJ's mental RFC was supported by the opinion of consultative examiner, Rebecca Fisher, Psy.D. (T. 836-839.) Dr. Fisher ultimately opined that Plaintiff was capable of simple, unskilled, routine work. (T. 838.) Therefore, it is recommended that the ALJ's mental RFC determination be upheld.

    **ii.)**     **Physical RFC**

Plaintiff argues the ALJ "failed to reconcile the discrepancy and explain how both opinions [from Kalyani Ganesh, M.D.]. . .were entitled to considerable weight in forming the RFC." (Dkt. No. 12 at 18-19 [Pl.'s Mem. of Law].) In support of her argument, Plaintiff relies on case law directing remand were the ALJ failed to reconcile "materially divergent" RFC opinions. *Williams v. Astrue*, No. 09-CV-3997, 2010 WL 5126208, at

9

*13 (E.D.N.Y. Dec. 9, 2010) (citing *Caserto v. Barnhart,* 309 F.Supp.2d 435, 445-446 (E.D.N.Y.2004)).

Consultative examiner, Dr. Ganesh, examined Plaintiff on April 29, 2010, and again on January 20, 2014. (T. 202, 833.) In 2010 and 2014, Dr. Ganesh noted on examination that Plaintiff was in no acute distress, had a normal gait, could walk on heels and toes, had a normal stance, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 219, 832.) In 2010, Dr. Ganesh noted Plaintiff was able to fully squat; however, in 2014 she was unable to squat. (T. 220, 833.) In 2010 and 2014, Dr. Ganesh noted Plaintiff had a normal examination regarding her head, face, eyes, ears, nose, throat, neck, chest, lungs, heart, and abdomen. (T. 220-221, 834.)

In 2010 and 2014, Dr. Ganesh noted that Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T. 221, 834.) On both occasions Plaintiff had no scoliosis, kyphosis, or abnormality in the thoracic spine. (*Id.*) In 2010 Plaintiff had lumbar spine flexion to 90 degrees and in 2014 she had lumbar spine flexion to 60 degrees. (*Id.*) On both occasions Plaintiff had extension to 15 degrees in the lumbar spine. (*Id.*) In 2014, Plaintiff had rotation of the lumbar spine to 10 degrees. (T. 834.) On both occasions Plaintiff had full range of motion and strength in her upper and lower extremities. (T. 221, 834.) On both occasions Plaintiff had intact hand and finger dexterity and full grip strength. (T. 221, 835.)

In 2010, Dr. Ganesh opined that Plaintiff had no limitation in her ability to sit, stand, and walk. (T. 222.) She opined that Plaintiff had a moderate limitation in lifting,

carrying, pushing, pulling, and rapid paced activities secondary to coronary artery disease. (*Id.*) She opined that Plaintiff had no gross difficulties with the use of her hands. (*Id.*) In 2014, Dr. Ganesh opined that Plaintiff had no limitation in her ability to sit, stand, and walk. (T. 835.) She opined that Plaintiff had a mild limitation in lifting, carrying, pushing and pulling. (*Id.*)

In formulating his physical RFC determination, the ALJ afforded Dr. Ganesh's opinions "considerable weight" reasoning that the opinions were consistent with her examination findings and consistent with other physical examinations in the record. (T. 397-398.)

Here, Dr. Ganesh's two opinions were not so "materially divergent" as to require remand for further clarification. Both opinions stated Plaintiff had no restrictions in her ability to sit, stand, or walk. (T. 222, 835.) Further, although Dr. Ganesh opined on one occasion that Plaintiff had "moderate" limitations in her ability to lift, carry, push, and pull (T. 222) and on another occasion "mild" limitations in her ability to lift, carry, push and pull (T. 835), neither degree of limitation would preclude Plaintiff from performing the exertional demands of light work. Therefore, the ALJ did not commit error in failing to reconcile the discrepancy between "mild" and "moderate" limitations imposed by Dr. Ganesh, because neither opinion was inconsistent with the ability to perform light work and therefore the opinions were not "materially divergent,".

Plaintiff also argues that the ALJ failed to adopt the "uncontradicted opinion" of Plaintiff's treating provider, Brian Harley, M.D., regarding her manipulative limitations. (Dkt. No. 12 at 19 [Pl.'s Mem. of Law].)

11

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Dr. Harley treated Plaintiff for her CTS in the context of her worker's compensation claim. On March 22, 2010, he stated that Plaintiff could "certainly [] continue to do light type activities;" however, "she is not going to be able to do manipulative, repetitive type work with her hands." (T. 250.) The ALJ stated that he did not adopt Dr. Harley's March 2010 statement because it was inconsistent with his observations that Plaintiff had "really quite good range of motion and objectively her hands seem to be doing pretty well." (T. 402, *referring to* T. 250.)

Here, the ALJ properly assessed Dr. Harley's manipulative limitation and his RFC determination limiting Plaintiff to continuous non-forceful grasping and frequent fingering

12

was supported by substantial evidence in the record. The ALJ properly concluded that Dr. Harley's manipulative limitations were not supported by his treatment observations and it can be gleaned from the remainder of the record that the ALJ relied on other objective medical evidence in the record in assessing Plaintiff's manipulative limitations. *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

As discussed by the ALJ, Dr. Ganesh noted in both examinations that Plaintiff's hand and finger dexterity was intact and her grip strength was 5/5 bilaterally. (T. 398, *referring to* T. 221, 835.) Dr. Harley noted in March of 2010, that Plaintiff had no carpal instability, clicking or snapping, and good range of motion. (T. 399, *referring to* T. 249.) Dr. Harley noted on April 17, 2009, that Plaintiff had "reasonable grip strength." (T. 256.) Craig Montgomery, M.D., noted in April 2014 that Plaintiff had 4/5 bilateral grip strength and normal sensation in her upper extremities. (T. 401, *referring to* 894.) Therefore, the ALJ properly relied on objective medical evidence in the record as reasoning for not adopting Dr. Harley's opinion. Further the manipulative limitations outlined in the RFC were also supported by Plaintiff's testimony. Plaintiff testified that she can use her hands to open a door knob and button, but cannot open a pickle jar or bag of cereal. (T. 397, *referring to* T. 430-431.)

Overall, the ALJ's physical RFC determination was supported by substantial evidence and it is clear from the ALJ's decision how he reached that conclusion; therefore, it is recommended that the ALJ's physical RFC determination be upheld.

> **B.      The ALJ's Credibility Determination**

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

14

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible. (T. 402.) The ALJ reasoned that her allegations were not supported by the objective medical evidence, her treatment history, her failure to seek treatment and adhere to recommendations, and that she continued to seek employment and collect unemployment insurance. (T. 402-403.)

Plaintiff argues that the ALJ erred in his credibility determination because he erroneously relied on Plaintiff's failure to cease her smoking habit and her collection of unemployment benefits. (Dkt. No. 12 at 20-21 [Pl.'s Mem. of Law].) However, for the reasons stated herein, the ALJ did not commit legal error in his credibility determination and his determination was supported by substantial evidence.

Several courts in this Circuit have concluded that the collection of unemployment benefits during the period of alleged disability was properly considered by an ALJ when

assessing a plaintiff's credibility. *See Felix v. Astrue,* 11-CV-3697, 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012) ("Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination."); *see Deboer v. Astrue*, 5:11-CV-1359, 2012 WL 6044847 at *4, (N.D.N.Y. Dec. 5, 2012) ("an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that she was ready, willing, and able to work during the time period for which she claims disability benefits as one factor relevant to assessing her credibility") (collecting cases); *Jackson v. Astrue,* 1:05-CV-01061, 2009 WL 3764221, at *8 (N.D.N.Y. Nov.10, 2009) ("Accordingly, the court finds that although plaintiff's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that plaintiff was no longer disabled, the ALJ properly considered plaintiff's claim for unemployment benefits when assessing plaintiff's credibility.").

The ALJ did not determine that Plaintiff's receipt of unemployment benefits was "proof positive" that she was not disabled, the ALJ considered Plaintiff's claim for unemployment as part of her overall credibility assessment. Therefore, the ALJ did not err in taking into consideration Plaintiff's receipt of unemployment benefits.

Although an ALJ may find Plaintiff less credible if she failed to follow medical treatment, an ALJ is obligated to consider any explanation Plaintiff may have for the failure. *See* SSR 96-7p, 1996 WL 374186.[2] Here, the ALJ did not consider any

---

[2] SSR 96-7p was in affect at the time of the ALJ's decision; however, it has since been superseded by SSR 16-3p, 2016 WL 1119029.

Under SSR 96-7p:

explanation for the failure to quit smoking. *See Goff v. Astrue*, 993 F.Supp.2d 114, 128 (N.D.N.Y. 2012) ("[G]iven the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health."). However, despite the ALJ's error, his credibility determination was supported by other substantial evidence in the record. *See Suttles v. Colvin*, No. 15-3803, 2016 WL 3573468, at *2 (2d Cir. June 30, 2016) (despite the ALJ's error in taking into consideration plaintiff's failure to quit smoking substantial evidence still supported the ALJ's credibility determination).

Here, substantial evidence supported the ALJ's credibility determination. The ALJ reasoned that although Plaintiff testified she could not work due to hand pain, Dr. Harley opined she could return to some form of work. (T. 428, 251-256.) Plaintiff indicated that she only took over the counter medication for her headaches. (T. 403, 434, 439.) The ALJ also noted that Plaintiff's complaints were inconsistent with her activities of daily living. (T. 394.) Plaintiff indicated that she did most of the cleaning, such as dusting, making beds, laundry, cooking, and washing dishes. (T. 164, 220,

---

[an] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 16-3p contains similar language:

if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.

833.) Plaintiff was able to drive a car. (*Id.*) Therefore, the ALJ properly relied on the objective medical evidence, Plaintiff's treatment history, Plaintiff's failure to seek treatment for her hands and headaches, and Plaintiff's activities of daily living in making a credibility determination.

### C. The ALJ's Step Five Determination

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 15, 2016

William B. Mitchell Carter
U.S. Magistrate Judge